## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| SANDINO BRITO DIAZ and MARIA BRITO, h/w, | Case No.: 3:21-cv-00036 |
| Plaintiffs, | ACTION FOR DAMAGES |
| v. | |
| JUNGERHANS MARITIME SERVICES GMBH & CO., KG and/or a/k/a JUNGERHANS REEDEREI, MARLOW NAVIGATION COMPANY LIMITED and MARCREW SCHIFFAHRTS GmbH | |
| Defendants. | |

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS</u>

/s/ John P. Fischer
John P. Fischer, Esq., V.I. Bar No. 1232
15B Norre Gade / P.O. Box 1197
Charlotte Amalie, VI 00804
Phone: (340) 715-5297
Fax: (888) 519-7138 / (305) 520-0323
John@frtriallawyers.com;
usviservice@frtriallawyers.com

**SALTZ MONGELUZZI BENDESKY P.C.**
/s/ Samuel B. Dordick
Jeffrey P. Goodman, Esq.*
Samuel B. Dordick, Esq.*
Saltz Mongeluzzi & Bendesky P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 575-2970
Fax: (215) 496-0999
jgoodman@smbb.com
sdordick@smbb.com
*admitted pro hac vice

Dated: November 10, 2023

Plaintiffs, Sandino Brito Diaz and Maria Brito, h/w, by and through their undersigned counsel, hereby file this Motion For Sanctions and Memorandum of Law in Support thereof and move this Court for an Order sanctioning Defendants, Jungerhans Maritime Services GmbH & Co., KG and/or a/k/a Jungerhans Reederei's (hereinafter "Jungerhans"), Marlow Navigation Company Limited's (hereinafter "Marlow"), and Marcrew Schiffarts GmbH's (hereinafter "Marcrew") (collectively, "Defendants") for their repeated, willful, and flagrant violations of this Court's discovery orders and rulings.

## I.    **PRELIMINARY STATEMENT**

Throughout this case, Defendants have demonstrated a willful and flagrant disregard for their discovery obligations and this Court's discovery orders and rulings.  Defendants deprived Plaintiffs of the ability to depose Defendants' employee, Mr. Yevheni Liashenko.  Mr. Liashenko is the crewmember who dropped the heavy metal lashing rod off the vessel and onto Plaintiff and is thus the most critical fact witness in this case.  Indeed he is the *only* witness who has personal knowledge of exactly how this accident happened.  Defendants acknowledged to this Court their obligation to produce Mr. Liashenko for deposition, but after failing to do so despite numerous opportunities, on May 30, 2023, this Court ordered that Defendants produce Mr. Liashenko for deposition.  *See* ECF 114.  The Court's Order was clear that "[f]ailure to produce the witness for deposition may result in sanctions."  Defendants never produced Mr. Liashenko for deposition and violated this Court's Order.  As discussed in depth below, Defendants' course of conduct in relation to Mr. Liashenko's deposition leaves no doubt that Defendants egregiously violated this Court's Order and discovery rulings.

1

Defendants also improperly withheld clearly discoverable evidence from Plaintiffs—evidence that Defendants affirmatively represented to this Court did not exist or would otherwise be produced.  Defendants concealed the existence of this evidence by shrouding it in an overly vague entry on their privilege.  This improper withholding of discoverable evidence was only realized when Defendants' counsel's office accidentally included Plaintiff's counsel on an email containing the documents before Defendants clawed them back.  Defendants have continued their withholding of these discoverable documents.  Defendants' discovery malfeasance has tremendously and irreversibly prejudiced Plaintiffs.

Defendants' disregard for their discovery obligations and this Court's orders and deadlines was again demonstrated by Defendants' late production of expert reports.  Under this Court's scheduling order, Defendants were required to produce their expert reports on or before September 5, 2023.  ECF 127 at ¶ 4.  During a September 14, 2023 status conference, the Court questioned Defendants' counsel as to why Defendants' expert reports had not been produced, and no justifiable excuse or explanation was given.  Defendants did not produce their expert reports until October 2, 2023, the day of the discovery deadline and nearly a month after they were due.  Defendants' repeated and flagrant violations of this Court's orders and their discovery obligations has severely prejudiced Plaintiffs, and Plaintiffs respectfully submit that harsh sanctions are warranted.

Specifically, Plaintiffs request that this Court sanction Defendants by striking Defendants' comparative negligence defense and precluding Defendants from offering the comparative negligence defense at trial.  Plaintiffs respectfully submit that the jury cannot legitimately compare Plaintiff's allegedly negligent conduct with that of Defendants' where the jury is deprived of Mr. Liashenko's testimony and the facts necessary to make the comparison and potential fault

allocation. Plaintiffs also request that this Court sanction Defendants by reading the jury a mandatory adverse inference instruction at trial concerning Defendants' egregious discovery violations and further order that Defendants' counsel is required to provide its entire investigative file to the Court for an *in camera* review to determine whether any additional discoverable evidence is being withheld.

## II. <u>FACTUAL BACKGROUND</u>

### A. <u>The May 10, 2020 Accident</u>

On May 10, 2020, Plaintiff, Sandino Brito Diaz, suffered severe and permanent injuries when a heavy metal container lashing rod was dropped nearly 20 feet from the deck of the M/V *Deneb J* (hereinafter "the Vessel" or "*Deneb J*"), landing directly on his head and neck. There is no dispute that the lashing rod was dropped off the deck of the *Deneb J* by Yevheni Liashenko, an employee of Defendants.

The *Deneb J* had just arrived to the Crowley St. Thomas port and was being prepared for discharge of the shipping containers. At the time of the accident, Plaintiff was working as a dock worker and crane operator for Crowley Caribbean Services, at Crown Bay, Lot 170-3, in St. Thomas, and was standing on the dock reviewing the discharge plan with a co-worker. At the same time, Defendants' crew member, Mr. Liashenko, was attempting to unlash a shipping container when he mishandled the lashing rod and dropped it overboard. The lashing rod plummeted 20-plus feet down directly onto Plaintiff's head and neck. Defendants' witnesses, including the Captain of the *Deneb J* and the Bosun[1] who was involved in the unlashing operations, admitted that proper procedure required that two personnel perform the unlashing operations so that one crewmember can focus on maintaining total control over the lashing rod at all times. *See*

---

[1] A "Bosun" or "Boatswain" is a vessel's officer in charge of equipment and the crew.

**Exhibit A**, Deposition of Jerico Villanueva at 31-33; **Exhibit B**, Deposition of Jethro De La Cruz at 42-44.  This procedure was not followed at the time of the accident, and the least experienced deckhand, Mr. Liashenko, was tasked with performing the operation himself, and dropped the lashing rod as a result.  **Ex. B**, Deposition of De La Cruz at 99-100.

Although Defendants' Bosun, Jethro De La Cruz, was in the vicinity of Mr. Liashenko and was involved in the unlashing operations, Mr. De La Cruz testified that he did not witness the accident and that Mr. Liashenko is the only person who knows exactly how and why this accident occurred.  Mr. De La Cruz testified that he did not witness the lashing rod get dropped over the side of the vessel, and that he believes the ***only*** person who personally witnessed how the accident occurred was Mr. Liashenko.  *See* **Ex. B**, Deposition of Jethro De La Cruz at 82-83.  Mr. De La Cruz testified that he was unable to answer questions as to exactly how the accident occurred and that Mr. Liashenko is the only person who could provide that testimony.  *Id.* at 83-84.  ***The importance of Mr. Liashenko's knowledge and testimony cannot be understated***.

As a result of this accident, Plaintiff suffered a severe neck including an incomplete spinal cord injury and fractures of his cervical spine that required a cervical decompression and permanent fusion of C3-C7.  Mr. Brito also suffered a traumatic brain injury resulting in post-concussion syndrome and associated debilitating symptoms that continue to plague him.

### B. <ins>Defendants' Failure to Produce Mr. Liashenko in Direct Violation of This Court's Orders and Instructions</ins>

From the very outset of this case, Defendants identified Mr. Liashenko as a fact witness that was employed by Defendants and was within Defendants' control.  On September 7, 2021, Defendant Jungerhans[2] served its Rule 26 Initial Disclosures identifying Mr. Liashenko as a

---

[2] Defendant Jungerhans was originally the only defendant named in this matter.  It was not until later that the involvement of Defendants Marlow and Marcrew was discovered, and those Defendants were subsequently added to the case.

witness that was "c/o Hamilton Miller & Birthisel, LLP"—Defendants' counsel. **Exhibit C**, Defendant Jungerhans' Rule 26 Initial Disclosures at p. 2; *see also* ECF 26, Defendant Jungerhans' Rule 16.1 Discovery Memorandum at p. 1 (identifying Liashenko as one of Defendants' crewmembers). After Defendants Marlow and Marcrew were added as Defendants and confirmed that Jungerhans' counsel would also be representing them, on November 29, 2022, Marlow and Marcrew served their Rule 26 Initial Disclosures and similarly identified Mr. Liashenko "c/o Hamilton Miller & Birthisel, LLP." **Exhibit D**, Defendants Marlow's and Marcrew's Rule 26 Initial Disclosures at p. 4. Thus, beginning on September 7, 2021, Defendants represented that Mr. Liashenko was a party witness within their control and whom Plaintiffs' counsel was not permitted to contact directly or take steps to independently secure his appearance in this case.

On July 14, 2022, Plaintiffs' counsel requested confirmation that Defendants would produce Mr. Liashenko, and other witnesses, for deposition. *See* **Exhibit E**, Email Correspondence. After receiving no response, Plaintiffs' counsel followed up and requested dates for the deposition of Defendants' witnesses, including Mr. Liashenko, on August 9, 2022, September 29, 2022, October 5, 2022, and October 17, 2022. *See* **Ex. E**; **Exhibit F**, Email Correspondence. Defendants' counsel never responded to any of these repeated requests for dates for Defendants' witnesses' depositions.[3] On February 7, 2023, Plaintiffs' counsel again requested dates for Defendants' witnesses' depositions. *See* **Exhibit G**, Email Correspondence.

After receiving no viable dates for Mr. Liashenko's deposition, Plaintiff filed a Motion to Compel and supporting Memorandum of Law requesting that this Court compel Defendants to produce its witnesses, including Mr. Liashenko, for deposition, among other contested discovery

---

[3] In December 2022, Defendants' counsel provided one date for Mr. Liashenko's deposition to occur at the end of January 2023; however Plaintiffs' counsel had a court hearing scheduled for that day and was unable to proceed with the deposition on the singular date offered. No additional dates were ever offered for Mr. Liashenko.

issues. ECF 92, 93. The Parties remotely appeared before this Court on March 8, 2023, to address the discovery disputes raised in Plaintiffs' Motion to Compel and again on March 14, 2023 for status conference. Defendants' counsel represented to the Court that Defendants could and would produce its witnesses, including Mr. Liashenko, for depositions, and the Court revised the case deadlines to allow additional time for Defendants to produce its witnesses and for the parties to complete discovery. ECF 105, March 21, 2023, Order.

Following the March 8, 2023 discovery conference, March 14, 2023 status conference and the entry of the Court's March 21, 2023 Order (ECF 105), on March 23, 2023, Plaintiffs' counsel requested that Defendants provide dates in April for the deposition of Mr. Liashenko. *See* **Exhibit H**, Email Correspondence. After receiving no response, on March 29, 2023, Plaintiffs' counsel again requested dates for Mr. Liashenko's deposition. *Id.* Defendants failed to provide date(s) that Mr. Liashenko would be produced for deposition, and on April 11, 2023, Plaintiffs' counsel sent correspondence to the Court requesting a discovery conference to address Defendants' ongoing failure to produce Mr. Liashenko and another witness for deposition, in addition to a dispute concerning Defendants' assertion of privilege over contemporaneous written witness statements.[4] *See* **Exhibit I**, April 11, 2023 Correspondence to the Court.

The Parties appeared before the Court on April 25, 2023 to address the discovery disputes and Defendants' continued failure to produce Mr. Liashenko for deposition. During this conference, Defendants continued to represent that Mr. Liashenko was a party witness employed by Defendants and within their control, and Defendants acknowledged their obligation to produce Mr. Liashenko for deposition. The Court instructed that Defendants should quickly secure and

---

[4] The Court urged Defendants to reconsider the assertion of privilege over these witnesses statements and advised that if the Court would likely order them produced, and Defendants ultimately produced the statements of Liashenko and De La Cruz.

provide dates for their witnesses' depositions. On May 1, 2023, Plaintiffs' counsel again requested that Defendants produce Mr. Liashenko for deposition. *See* **Exhibit J**, Email Correspondence at May 1, 2023 Email. In response, Defendants counsel merely advised that Defendants "are working to get dates." *Id.* at May 3, 2023 Thomas to Dordick Email. Plaintiffs' counsel advised that if dates for the deposition were not confirmed by May 8, Plaintiffs would be filing a motion with the Court. *Id.* at May 3, 2023 Dordick to Thomas Email.

Despite Plaintiffs' numerous requests for dates for Mr. Liashenko's deposition over the course of nearly ten (10) months, the Court's statements and firm instructions to Defendants during the March 14, 2023 and April 25, 2023 conferences, and Defendants' explicit acknowledgement of the obligation to produce Mr. Liashenko, Defendants failed to do so. On May 12, 2023, Plaintiffs' filed a Motion to Compel Depositions and supporting Memorandum of Law requesting that the Court order Defendants to produce Mr. Liashenko and another witness for depositions within ten (10) days. *See* ECF 111, 112. On May 17, 2023, this Court Ordered that Defendants shall respond to Plaintiffs' Motion to Compel, if at all, on or before May 22, 2023. ECF 113. Defendants failed to file any response to Plaintiffs' Motion to Compel. On May 30, 2023, this Court entered the following Order:

> This matter is before the Court on plaintiffs' motion to compel depositions of Yevheni Liashenko and Jethro De La Cruz. [ECF 111]. **These individuals are employees of defendant Marlow Navigation Company Limited and are the individuals who allegedly dropped the equipment that injured plaintiff Sandino Brito Diaz. [ECF 112] at 2. Despite acknowledgement of the obligation to produce them for deposition at an April 25, 2023, discovery conference with the Court, defendant failed to produce these witnesses**. On May 17, 2023, the Court ordered defendants to respond to the motion, if at all, no later than May 22, 2023. [ECF 113]. No party responded to the motion.
>
> The premises considered, it is ORDERED that the motion is GRANTED, and **defendant shall produce these witnesses for deposition no later than June 10, 2023. Failure to produce the witnesses for deposition may result in sanctions**.

ECF 114 (emphasis added).

Defendants offered to produce Mr. De La Cruz for a remote deposition on June 12, 2023, and although beyond the time frame provided by the Court's May 30, 2023 Order, Plaintiffs agreed to conduct his deposition on that date. However, on June 12, 2023, Defendants "produced" Mr. De La Cruz for the deposition while he was on an active vessel and dock and attempting to join into the Zoom deposition through his cell phone. Due to the witness's location on an active, noisy dock and his poor cell phone reception, the deposition of Mr. De La Cruz could not proceed on June 12, 2023 and the Parties were back before the Court on June 14, 2023. The Court provided Defendants with one last shot to produce Mr. De La Cruz, and his deposition was successfully completed on June 29, 2023.

As to Mr. Liashenko, June 10, 2023 came and went and Defendants failed to produce Mr. Liashenko for deposition. Instead, on the eve of the deadline to produce Mr. Liashenko set by the Court (and after the expiration of the fact discovery deadline), on June 8, 2023, Defendants' counsel informed Plaintiffs' counsel that Mr. Liashenko "is no longer an employee of any of the Defendants[]" and that Defendants "have updated [the] disclosures to reflect that he is no longer an employee[.]" *See* **Exhibit K**, Email Correspondence. Defendants also provided, for the first time, Mr. Liashenko's contact information. *Id.* Then, on June 9, 2023, Defendants filed a response to the Court's May 30, 2023 Order informing the Court for the first time that Defendants were not able to produce Mr. Liashenko "[d]ue to Mr. Liashenko no longer being an employee of any of the Defendants[.]" ECF 124 at ¶ 5. Defendants also blamed the war in the Ukraine for their repeated failures to produce Mr. Liashenko. *Id.* Defendants' June 8, 2023 representation that Mr. Liashenko was no longer an employee stood in stark contrast to the affirmative representations Defendants repeatedly made to this Court at the conferences in March, April, and May 2023 and Defendants' Rule 26 disclosures.

8

The Court held a remote status conference on June 14, 2023. *See* ECF 127. The Court noted that, "Defendant now claims it cannot produce one witness because he has left defendant's employ[,]" and that "Plaintiff intends to file a motion for sanctions." *Id*. The Court ordered that, "Defendants shall, on or before June 22, 2023, file a notice with the Court as to when and why witness Liashenko left defendant's employ, along with the date his last contract expired." *Id.* at ¶ 1. On June 20, 2023, Defendants filed an Informative Notice Regarding Yevheni Liashenko which stated that, "[p]rior to a June 7, 2023 communication that Liashenko was no longer an employee, all indications were that the only reason Liashenko could not work was due to restriction by his home country of Ukraine. **There is no resignation or termination on file. In fact, his employer would welcome his return.**" ECF 130 at ¶ 11 (emphasis added). Plaintiffs respectfully submit that it is clear that Defendants considered Mr. Liashenko as an employee under their control (and indeed did not have a resignation or a termination on file), until June 7, 2023 when it became apparent that Defendants would violate this Court's May 30, 2023 Order, so Defendants simply decided that Mr. Liashenko was no longer an employee.

Defendants consistently represented to Plaintiffs and to this Court that Mr. Liashenko was a party witness and employee under Defendants' control. The Court repeatedly instructed Defendants to produce Mr. Liashenko, and Defendants acknowledged their obligation to do so. After repeatedly failing to produce Mr. Liashenko, this Court entered an Order giving Defendants ten (10) days comply. Defendants violated this Court's Order and never produced Mr. Liashenko for deposition and Plaintiffs, the Court, and ultimately the jury are deprived of his unique knowledge and testimony.

C.    **Defendants' Willful Concealment and Withholding of Discoverable Documents**

At the outset of this case, Plaintiffs requested that Defendants produce all photographs of the subject shipping container and lashing rod involved in this accident, as well as all photographs of the *Deneb J*, the subject vessel, while docked at the location of the accident. *See* **Exhibit L**, Plaintiffs' RFPs to Defendants at ¶¶ 16-18. Plaintiffs also requested all witness statements taken in relation to the accident. *Id.* at ¶ 23. In response, Defendants did not produce any photographs and instead lodged objections that the requests were overbroad, related to subsequent remedial measures, and/or that the requests for photographs of the instrumentalities involved in this accident and the witness statements were "bad faith" discovery that sought privileged materials. *See* **Exhibit M**, Defendant Jungerhans' Responses to RFPs at ¶¶ 16-18. Plaintiffs' counsel followed up multiple times with Defendants concerning these baseless objections and requested that any photographs be produced. *See* **Exhibit N**, Email Correspondence. Plaintiffs' counsel further requested that if any documents were being withheld on the basis of privilege, that a privilege log be promptly produced. *Id.*

Defendants refused to cure these discovery deficiencies and on February 24, 2023, Plaintiff filed a Motion to Compel and accompanying Memorandum of Law to address these document discovery disputes and the issues related to Defendants' witnesses' depositions as described above. *See* ECF 92, 93. The Court held a discovery conference on March 8, 2023 to address Plaintiffs' motion. During the March 8, 2023 discovery conference, the Court advised Defendants that all photographs of the subject shipping container, lashing rod, and/or vessel should be produced, and Defendants conceded that such photographs were discoverable and affirmatively represented that any responsive photographs would be produced to the extent possessed by Defendants. The Court

further advised Defendants' counsel to produce a privilege log along with its supplemental production.

On March 20, 2023, Plaintiffs deposed Captain Villanueva. Captain Villanueva testified that in the immediate aftermath of this accident, he conducted interviews of the involved crewmembers and took written witness statements, and also took photographs. *See* **Ex. A** at 137-138. Plaintiffs requested the witness statements and Defendant had already represented to the Court during the March 8, 2023 discovery conference that all photographs would be produced.

On March 31, 2023, Defendants produced additional documents, but did not produce any additional photographs of the subject shipping container, lashing rod, and/or vessel. Defendants also produced a privilege log. *See* **Exhibit O**, Defendants' Privilege Log. Defendants' privilege log had four entries—three entries for separate one-page written witness statements by Mr. De La Cruz, Mr. Liashenko, and Captain Villanueva, which were being withheld on the basis of an asserted work product privilege, and an entry for the entire "Investigative File of Retained Counsel" on the basis of a work product and attorney-client privilege. *Id.* Plaintiffs' counsel followed up with Defendants' counsel to request immediate production of the previously undisclosed written witness statements and for clarification as to what documents fell under the "Investigative File of Retained Counsel" so that Plaintiffs could independently assess whether privilege was properly asserted. *See* **Exhibit P**, Email Correspondence.

After Defendants refused to produce the written witness statements or provide any clarity as to what, if any, documents were being withheld under the "Investigative File of Retained Counsel" entry on the privilege log, on April 11, 2023, Plaintiffs' counsel sent correspondence to the Court requesting a discovery conference. **Ex. I**. The Court held a discovery conference on April 25, 2023 and advised Defendants to reconsider the assertion of privilege over the witness

statements. Defendants ultimately caved and produced the written statements of Liashenko and De La Cruz. During the April 25, 2023 discovery conference, Plaintiffs also objected to the overly vague nature of Defendants' privilege log entry for the "Investigative File of Retained Counsel" and asserted that this entry did not provide Plaintiffs or the Court with the ability to determine whether any potentially discoverable documents were being withheld or independently assess whether any privilege assertions were legitimate. To Plaintiffs' counsel's recollection, the Court asked Defendants' counsel to confirm that potentially discoverable documents were not being withheld under that privilege log entry and Defendants' counsel represented they were not. The Court advised that it was comfortable with Defendants' privilege log entry for the "Investigative File of Retained Counsel."

Unfortunately, on September 13, 2023, Plaintiffs' concerns regarding Defendants' overly vague privilege log entry came to fruition. On that date, Defendants' counsel's office Bcc'd Plaintiffs' counsel on an email containing a link to documents titled "76991 – Records to Experts." *See* **Exhibit Q**, Email Correspondence at September 13, 2023 Email. At that time, Defendants' expert reports were late and had not yet been produced, and Plaintiffs' counsel assumed that this link was related to Defendants' expert report production and related expert discovery. Plaintiffs' counsel clicked on the link to view the documents and upon review, ***discovered dozens of previously undisclosed photographs of the subject shipping container, lashing rod, and vessel at issue in this case which were taken in the 1-2 days after the accident***. Plaintiffs' counsel emailed Defendants' counsel requesting clarification on why these important photographs were not previously produced despite being in Defendants' possession for over 3 years and despite the Court's clear instructions during the discovery conference on Plaintiffs' Motion to Compel that any such photographs must be produced. **Ex. Q** at September 16, 2023 Email.

In response, Defendants' counsel sent a letter advising that the materials had been inadvertently produced to Plaintiffs and that Defendants were asserting a privilege over the photographs per the Defendants' previously produced privilege log (i.e., under the "Investigative File of Retained Counsel" entry). *See* **Exhibit R**, September 18, 2023 Letter. Defendants' counsel requested that Plaintiffs return, sequester, or destroy these photographs. *Id.* Plaintiffs' counsel advised that the photographs were not saved, and the link was deactivated and the photographs could no longer be accessed. Plaintiffs' counsel noted that the existence and withholding of these documents was directly in contrast to the affirmative representations Defendants made to this Court during the March 2023 discovery conference, where Defendants' counsel advised the Court that it would produce all photographs of the container, lashing rod, and vessel at issue. **Ex. Q** at September 19, 2023 Email. Plaintiffs' counsel requested that the Defendants immediately produce the photographs, but Defendants have refused to produce them.

It is clear that Defendants made material misrepresentations to the Court concerning the existence of photographs responsive to Plaintiffs' RFPs and which are critical to this case. Defendants attempted to conceal the existence of these discoverable photographs by shrouding them in an overly vague privilege log entry. Had it not been for Defendants' counsel's office inadvertently sending the link to Plaintiffs' counsel, Defendants' concealment of this discoverable evidence would never have been uncovered. Defendants' withholding of discoverable evidence that Defendants represented to this Court did not exist or otherwise would be produced is an egregious, willful, and flagrant violation of Defendants' discovery obligations and this Court's instructions. Plaintiffs respectfully submit that harsh sanctions are warranted.

## III.    ARGUMENT

### A.    Legal Standard for Sanctions

A district court "bears the responsibility and has the authority to monitor the conduct of attorneys and litigants appearing before it." *In re Tutu Wells Contamination Litigation*, 162 F.R.D. 46, 62 (D.V.I. 1995).  Federal Rule of Civil Procedure 37 provides one vehicle through which a district court may exercise its inherent responsibility and authority to sanction a party for contempt and/or discovery violations.  Rule 37(b)(2)(A) provides that if a party disobeys an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the district court "may issue further just orders[]" which may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)—(vii).

Rule 37(b)(2)(B) further provides that "[i]f a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)—(iv), unless the disobedient party shows that it cannot produce the other person."  Fed. R. Civ. P. 37(b)(2)(B).  Rule 37(c) concerns the failure to disclose or supplement an earlier response and provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was

14

substantially justified or is harmless." Fed. R. Civ. P. 37(c). In addition to or instead of this sanction, the court, on motion, "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." Fed. R. Civ. P. 37(c)(1)(C).

"The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007) (citing *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976)). "Rule 37(b) provides a veritable arsenal of sanctions to deter and rectify discovery violations." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 582 (3d Cir. 2018) (quotations omitted). While "the list of sanctions provided by Rule 37(b)(2)(A) is not exhaustive, and the decision to impose sanctions is generally entrusted to the discretion of the district court[,]" the Rule is "not equivalent to carte blanche[.]" *Id.* at 580 (citations omitted). The Rule limits the district court's discretion in two ways: "First, any sanction must be 'just'; second, the sanction must be *specifically related* to the particular 'claim' which was at issue in the order to provide discovery." *Id.* at 580 (quoting *Harris v. City of Phila.*, 47 F.3d 1311, 1330 (3d Cir. 1995) (emphasis in original)).

Under Rule 37(b), the court, "may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice, including the most severe sanction of dismissal." *In re Tutu Wells Contamination Litigation*, 162 F.R.D. at 63. "Failure to disclose, or the making of false or misleading disclosure during discovery amounts to the type of 'culpable failure' that is appropriately disciplined pursuant to Rule 37(b)." *Id.* Under Rule 37, "a negligent 'refusal' or 'failure to comply' with discovery is a sufficient basis for sanctions. Thus, unlike sanctions imposed pursuant to the court's inherent powers, 'willfulness is relevant only to the selection of sanctions, if any, to be imposed.'" *Id.* (quoting *Societe Internationale v. Rogers*, 357 U.S. 197,

212 (1958)). **"However, once culpable conduct is found, the court is required to impose such sanctions that are just, both 'to penalize' the wrongful conduct and 'to deter those who might be tempted to such conduct in the absence of a deterrent."** *Id.* (emphasis added) (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

## B. This Court Should Sanction Defendants by Striking Their Comparative Negligence Defense

Defendants' conduct concerning the production of Mr. Liashenko for deposition and Defendants' willful concealment of clearly discoverable photographs warrants harsh sanctions pursuant to Rule 37 and this Court's inherent power to sanction litigants. Plaintiffs respectfully submit that the only just sanction commensurate with Defendants' conduct and the severe prejudice inflicted on Plaintiffs is to strike Defendants' comparative negligence defense and preclude Defendants from offering any evidence or argument of comparative negligence at trial.

In short, this is a just and appropriate sanction because Defendants' repeated failure to produce Mr. Liashenko for deposition not only deprived Plaintiffs of the opportunity to question Mr. Liashenko and secure his testimony in this case, but it has also deprived the jury of the critical facts, information, and testimony required to adequately compare Plaintiff's and Defendants' allegedly negligent conduct. The jury cannot fairly compare conduct and allocate fault between Plaintiff and Defendants where Defendants have ensured that the jury can hear all of Plaintiffs' testimony but none of Mr. Liashenko's. Plaintiffs and the jury have been further hamstrung by Defendants' bad faith withholding of important photographs of the equipment involved in the accident. Striking Defendants' comparative negligence defense is a just sanction that is specifically related to Defendants' sanctionable conduct, and the discovery orders and obligations that were violated.

Defendants spent nearly the entirety of this case affirmatively representing to the Court and to Plaintiffs that Mr. Liashenko was a party witness within Defendants' control and that he was "c/o Hamilton Miller & Birthisel, LLP". **Ex. C** at p. 2; **Ex. D** at p. 4. Thus, from the outset, Plaintiffs were prohibited from attempting to contact Mr. Liashenko directly to secure his appearance at deposition or taking other means to secure his attendance, such as through Hague Convention procedures. Defendants repeatedly strung Plaintiffs and the Court along, offering false promises that Mr. Liashenko could and would be produced, and that Defendants were attempting to secure dates for his deposition. As this Court stated, "[d]espite acknowledgement of the obligation to produce [Mr. Liashenko] for deposition at an April 25, 2023 discovery conference with the Court, defendant failed to produce [him]." ECF 114.

In a last-ditch effort to wash away their repeated failures to produce Mr. Liashenko and Defendants' clear violation of this Court's May 30, 2023 Order, Defendants suddenly decided that Mr. Liashenko was no longer an employee and thus could not be produced. *See* ECF 130. Defendants' sudden and self-serving proclamation that Mr. Liashenko was no longer an employee appears to have been motivated purely by Defendants' impending violation of the Court's Order and not by actual facts. Indeed, Defendants confirmed that "[t]here is no resignation or termination on file. In fact, his employer would welcome his return." ECF 130 at ¶ 11. Defendants spent the entire case representing to the Court that Mr. Liashenko was a party witness in their control and that he could be produced for deposition. Defendants should not be permitted to suddenly take the opposite position just to excuse their violation of the Court's Order. Defendants also attempted to blame the war in the Ukraine for their failures, but this Court properly and swiftly dismissed that explanation before entering the May 30, 2023 Order (ECF 114) and any similar excuse should be treated similarly now.

17

In addition to Defendants' failure to produce the most critical fact witness in this case for deposition, Defendants willfully concealed (and continue to withhold) critical evidence in this case.  As discussed at length, *supra*, Defendants intentionally hid the existence of photographs of the subject shipping container, lashing rod, and vessel at issue in this case that were taken in the 1-2 days following the accident.  Given that there can be no legitimate claim of privilege over these photographs, during the March 2023 discovery conference Defendants' counsel conceded any such photographs were discoverable and affirmatively represented to this Court that it would produce any such photographs in their possession.  Instead of producing the clearly discoverable photographs, Defendants tried to hide their existence under an overly vague privilege log entry. When directly questioned by the Court at an April 2023 discovery conference as to whether any potentially discoverable documents were being withheld under the vague privilege log entry, Defendants' counsel responded there weren't.  These were material misrepresentations Defendants made to this Court and it is difficult to interpret Defendants' conduct as anything other than a bad faith attempt to conceal the existence of evidence from Plaintiffs and this Court.  Had it not been for Defendants' counsel's office accidentally including Plaintiffs' counsel on an email with these photographs, Defendants' hiding of documents never would have been uncovered.

Defendants' violation of this Court's May 30, 2023 Order and their repeated failure to produce Mr. Liashenko for deposition, and Defendants intentional hiding of documents has inflicted severe prejudice on Plaintiffs.  In effect, Defendants have deprived Plaintiffs of critical evidence that Plaintiffs required to support their claims against Defendants and to combat Defendants' comparative negligence defense.  Defendants have likewise deprived the jury of the facts, evidence, and testimony required to fairly and adequately compare the alleged negligence of

Plaintiff versus that of Defendants and reach a just allocation of fault. The testimony of Mr. Liashenko would have been critical to the jury's consideration of comparative fault.

For example, had Mr. Liashenko been produced for deposition and testified that he dropped the lashing rod because he was trying to watch a funny YouTube video at the same time, the jury's determination of Defendants' comparative fault would likely differ drastically compared to if he had testified that he was trying his best but the rod simply slipped out of his hand. Similarly, the jury's determination of comparative fault may differ if able to view the condition of the subject container and lashing rod through the post-accident photographs Defendants intentionally hid. Plaintiffs respectfully submit that the jury cannot compare fault when Defendants have deprived them of the evidence needed to do so fairly and adequately. The only just sanction that is commensurate with Defendants' intentional and bad faith conduct and which is specifically related to the discovery orders and obligations violated is the striking of Defendants' comparative negligence defense.

Although sanctioning a defendant by striking its comparative negligence defense is a significant sanction, courts have used Rule 37 to do so when warranted. *See, e.g. Bellamy v. Wal-Mart Stores, Texas, LLC*, 2019 WL 3936992, *4 (W.D. Tex. Aug. 19, 2019) (utilizing Rule 37 to strike defendant's comparative negligence defense as a sanction for withholding and misrepresenting the existence of evidence, holding that "[t]he appropriate curative measure in this case is to disallow the Defendant from asserting or arguing any comparative negligence in this case."). It is warranted here. Defendants' course of conduct demonstrates a flagrant disregard for its discovery obligations and this Court's Order and verbal instructions and rulings during discovery conferences. Worse, Defendants' intentional concealment of critical photographic evidence can only fairly be interpreted as willful and bad faith. Defendants' conduct is the very

type of "culpable failure" appropriately disciplined pursuant to Rule 37. *In re Tutu Wells Contamination Litigation*, 162 F.R.D. at 63. The willfulness of Defendants' failures calls for a harsh sanction.

Defendants are international shipping conglomerates with human resources departments, general counsels offices, and gargantuan resources. There is no doubt that Defendants had the means to figure out the status and location of its employee, Mr. Liashenko. Defendants declined to do this and instead suddenly and conveniently announced that Mr. Liashenko was no longer an employee after three years of contrary representations and when it was clear that Defendants would violate the Court's Order. Plaintiffs respectfully submit that the only just sanction that can cure the prejudice inflicted on Plaintiffs is to strike Defendants' comparative negligence defense.

### C.  This Court Should Give a Mandatory Adverse Inference Instruction at Trial

In addition to striking Defendants' comparative negligence defense, Plaintiffs request that the Court give the jury a mandatory adverse inference instruction at trial advising the jury of Defendants' egregious discovery violations and instructing that the jury must find that the evidence and testimony withheld contained damaging information. If the Court is inclined to give such a mandatory adverse inference instruction, Plaintiffs will provide the Court with suggested language for the instruction at the time of trial. Plaintiffs further request that the Court order Defendants' counsel to produce its entire "Investigative File of Retained Counsel" (**Ex. O**) to the Court for an *in camera* review to determine whether any arguably discoverable documents were withheld in addition to the photographs which Defendants continue to withhold. Given that Defendants' concealment of discoverable photographs only came to light as a result of Defendants' counsel's office accidentally including Plaintiffs' counsel on an email, Plaintiffs have no confidence that other discoverable documents are not being improperly withheld.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter the attached Order granting Plaintiffs' Motion for Sanctions and striking Defendants' comparative negligence defense and precluding Defendants from offering evidence in support of such a defense at trial.  Plaintiffs further respectfully request that the Court Order that a mandatory adverse inference instruction will be given at trial, and further order that Defendants' counsel shall provide its entire file to the Court for an *in camera* review to determine whether any discoverable documents are being withheld.

Respectfully submitted,

*/s/ John P. Fischer*
John P. Fischer, Esq., V.I. Bar No. 1232
15B Norre Gade / P.O. Box 1197
Charlotte Amalie, VI 00804
Phone: (340) 715-5297
Fax: (888) 519-7138 / (305) 520-0323
John@frtriallawyers.com;
usviservice@frtriallawyers.com


Dated: November 10, 2023

SALTZ MONGELUZZI BENDESKY P.C.
*/s/ Samuel B. Dordick*
Jeffrey P. Goodman, Esq.*
Samuel B. Dordick, Esq.*
Saltz Mongeluzzi & Bendesky P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 575-2970
Fax: (215) 496-0999
jgoodman@smbb.com
sdordick@smbb.com
*admitted pro hac v

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 10, 2023, I caused a true and correct copy of the foregoing document to be served on the following person of counsel via CM/ECF:

Jennifer Miller Brooks, Esq.                    **<u>VIA E-MAIL</u>**
Chivonne Thomas, Esq.
HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131-2332
jmiller@hamiltonmillerlaw.com
cthomas@hamiltonmillerlaw.com
   *Counsel for Defendants*

Carol G. Hurst                                        **<u>VIA E-MAIL</u>**
PO Box 10829
5143 Palm Passage, Suite 18 B-1
St. Thomas VI 00802
Tel. 340-514-5541; Fax 888-672-6130
cghurst@hurstvilaw.com
   *Counsel for Signal*


                                        */s/ John P. Fischer*